IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-10037
_____


STONEHEDGE/FASA-TEXAS JDC,
Limited Partnership,

                              Plaintiff-Appellee,

                versus

VANCE C. MILLER,

                              Defendant-Appellant.

_____

            Appeal from the United States District Court for
                    the Northern District of Texas
                         (3:94-CV-912-G)
_____
                       March 10, 1997

Before POLITZ, Chief Judge, REAVLEY and DENNIS, Circuit Judges.

REAVLEY, Circuit Judge:[*]

        The district court entered judgment against Vance Miller

based on his guaranties of the Prestonwood, VCMS, and Parkway

North Venture notes.  We agree with the district court that

Miller is liable on his guaranties of the Prestonwood and VCMS

loans, but disagree that he is liable on the Parkway guaranty.

Accordingly we affirm the judgment as modified herein.

_____

        [*] Pursuant to Local Rule 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in Local Rule
47.5.4.

A.  *The Prestonwood Guaranties*

PGC, Inc. was the borrower on the Prestonwood notes which Miller guaranteed.  Miller claims that the PGC bankruptcy plan effected a novation of the Prestonwood loans and thereby extinguished his guaranty obligations.

Miller correctly notes that, pursuant to PGC's bankruptcy plan, the April 30, 1992 note, not guaranteed by Miller, was "given in novation and extinguishment of the obligations of PGC, Inc., a Texas non-profit corporation ('Debtor') to the RTC."  The plan likewise provides that it "shall constitute a novation of any debt of whatever character against the *Debtor* . . . ."  Miller also correctly notes that the RTC approved of the plan, and that, as a general proposition, "[f]or there to be a guarantor there must be a primary obligation on the part of another the performance of which is guaranteed."[1]

A novation requires that the parties intended the new agreement to replace obligations under the old agreement.[2]  The district court did not err in concluding that the bankruptcy plan and the new note were not intended to extinguish Miller's obligations on the Prestonwood guaranties.  The plan and new note reference a novation as to the *debtor*, PGC, and do not purport by

---

[1]  *Moore v. Grain Dealers Mut. Ins. Co.*, 450 S.W.2d 954, 959 (Tex. App.--Houston [1st Dist.] 1970, no writ).

[2]  *Landrum v. Devenport*, 616 S.W.2d 359, 362 (Tex. App.-- Texarkana 1981, no writ).

2

their terms to release Miller, the guarantor, from his obligations. The guaranties plainly state that the bankruptcy or release of PGC do not extinguish Miller's obligations as guarantor.

PGC, not Miller, was the debtor in the bankruptcy proceeding. Texas and federal bankruptcy law recognize that a discharge in bankruptcy does not extinguish the obligation of the guarantor, unless the plan expressly so provides. The Bankruptcy Code provides that "discharge of a debt of the debtor does not affect the liability of any other entity on . . . such debt."[3] "It is settled law, both at the federal and state level, that a discharge in bankruptcy does not affect the liability of a guarantor."[4] Indeed, "[o]ne of the primary purposes for obtaining a guarantor to a note is to provide an alternative source of repayment in the event that the principal obligor's debt is discharged in bankruptcy."[5]

B. *The VCMS Guaranties*

Miller argues that the RTC waited too long to sue for recovery under the VCMS guaranties. The relevant dates follow.

---

[3]  11 U.S.C. § 524(e).

[4]  *Austin Hardwoods, Inc. v. Vanden Berghe*, 917 S.W.2d 320, 324 (Tex. App.--El Paso 1995, no writ). *Accord, NCNB Texas Nat'l Bank v. Johnson*, 11 F.3d 1260, 1266 (5th Cir. 1994); *In re Sandy Ridge Dev. Corp.*, 881 F.2d 1346, 1350-52 (5th Cir. 1989).

[5]  *R.D.I.C. Indus. Dev. Fund v. Snyder*, 539 F.2d 487, 491 (5th Cir. 1976)

The RTC became receiver for the three original holders of the VCMS notes beginning in July of 1989.[6]  On April 2, 1991, the RTC foreclosed on real estate securing the VCMS loans.  The RTC brought this suit against Miller on May 6, 1994.  Hence, for our purposes, it is undisputed that the RTC sued more than two years after the foreclosure, but less than six years after its appointment as receiver.

Miller argues that the action is barred by the limitations provision of Tex. Prop. Code § 51.003(a), which provides that "[i]f the price at which real property is sold at a foreclosure sale . . . is less than the unpaid balance of the indebtedness secured by the real property, resulting in a deficiency, an action brought to recover the deficiency must be brought within two years of the foreclosure sale . . . ."

We hold that the Texas statute is preempted by the inconsistent federal statute of limitations set out in the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), which provides:

> (A) **In General**
> Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be --
>   (i) in the case of any contract claim, the longer of
>       (I) the 6-year period beginning on the date the claim accrues; or
>       (II) the period applicable under State law . . . .

---

[6]  This is the date alleged in the RTC complaint and amended complaint.  Miller never disputed this date.

4

(B) **Determination of the date on which a claim accrues**
For purposes of subparagraph (A), the date on which the statute of limitation begins to run on any claim described in such paragraph shall be the later of --
   (i) the date of the appointment of the Corporation as conservator or receiver; or
   (ii) the date on which the cause of action accrues.[7]

We have described this provision as "FIRREA's preemption of state statutes of limitations."[8] While we have held that the federal statute does not revive state claims that are untimely at the time the RTC or FDIC is appointed receiver, the federal statute rather than the state statute of limitations applies if the state claims were viable at the time the RTC or FDIC is appointed receiver.[9] In our case, Miller makes no argument that the claims on the VCMS guaranties were stale when the RTC was appointed receiver in 1989. Under the federal limitations provision, the RTC had a minimum of six years from this date to bring suit.

Miller argues that the Texas statute on which he relies is a "substantive statute of repose" rather than a "procedural statute of limitations." He cites *Resolution Trust Corp. v. Olson*,[10] where the court held that an Arizona statute similar to the Texas

---

[7] 12 U.S.C. § 1821(d)(14).

[8] *FDIC v. Barton*, 96 F.3d 128, 133 (5th Cir. 1996).

[9] *FDIC v. Dawson*, 4 F.3d 1303, 1306-07 (5th Cir. 1993), *cert. denied*, 114 S. Ct. 2673 (1994).

[10] 768 F. Supp. 283 (D. Ariz. 1991).

statute was not preempted, because the federal statute does not preempt state "substantive statutes of repose."[11]

We find this argument unpersuasive for several reasons. First, as explained above, in our circuit the federal statute applies so long as the claim is not time-barred under state law at the time of appointment of the RTC as receiver. Here the claim was not time-barred under state law on the date of the RTC's appointment. Second, in our view, preemption does not turn on whether the state statute is "procedural" or "substantive." Preemption is a question of congressional intent, and in the case of conflict preemption presented here, depends on whether there is a direct conflict between the federal and state law or the state law interferes with the regulatory scheme established by Congress.[12] There is no question that the state and federal statutes conflict. The federal statute provides specified minimum periods of time (six years in the case of a contract claim) running from the date of the RTC's appointment as receiver, and "allows the RTC to investigate and determine what causes of action it should bring on behalf of a failed institution" during this period.[13] In our case, applying the

_____

[11] *Id*. at 285.

[12] *Hetzel v Bethlehem Steel Corp.*, 50 F.3d 360, 363 (5th Cir. 1995).

[13] *Barton*, 96 F.3d at 133.

6

Texas statute would extinguish a claim which the federal statute preserves.

Third, even if there is a distinction between a "statue of limitations" and a "statute of repose," Texas law treats the state statute at issue here as a statute of limitations. The Texas Supreme Court has described a statute of repose as one that "runs from a specified date without regard to accrual of a cause of action,"or one that "cuts off a right of action before it accrues."[14] The provision of the Property Code at issue here cannot properly be described in this manner. It sets a time limitation for seeking a deficiency judgment running from the date of foreclosure. Foreclosure, however, cannot occur until the borrower defaults, and the lender's cause of action on a note likewise accrues when the borrower defaults.[15] Hence, the Texas statute does not run prior to, or without regard to, the accrual of the cause of action. A Texas court has agreed with us, holding that the FIRREA limitations provision preempts the state statute because "section 51.003(a) is a statute of limitations, not a statute of repose."[16]

---

[14] *Trinity River Auth. v. URS Consultants, Inc.*, 889 S.W.2d 259, 261 (Tex. 1994); *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 654 n.1 (Tex. 1989).

[15] *McLemore v. Pacific Southwest Bank, FSB*, 872 S.W.2d 286, 293 (Tex. App--Texarkana 1994, writ dism'd by agr.)

[16] *Trunkhill Capital, Inc. v. Jansma*, 905 S.W.2d 464, 468 (Tex. App.--Waco 1995, writ denied).

C. *The Parkway North Venture Guaranty*

The district court found that the Parkway Note "has not been paid by the maker thereof," and that Miller was therefore liable on his guaranty of this note. We hold that the court erred in holding Miller liable under his guaranty of this note.

The note has an unusual provision relating to payment. By its terms the note does not mature until June 30, 1999. Interest was due monthly, but only "[t]o the extent that Net Cash Flow (as defined in the Consolidation Agreement) is available [except with respect to minimum payments (as defined in the Consolidation Agreement) which shall be due and payable monthly in the amounts and to the extent set forth in the Consolidation Agreement, regardless of the amount of Net Cash Flow for a particular month]." As we read the agreement, only certain "minimum payments" as defined in a separate Consolidation Agreement were due from the borrower before the maturity date, unless "Net Cash Flow" as defined in that separate agreement were available to make payments.

The evidence of amounts due on the various guaranties was minimal. The RTC offered the brief testimony of an employee for Summit National Realty, which had an asset management contract with the RTC. The witness had prepared a summary chart of the amounts allegedly due from Miller on his guaranties. With respect to the Parkway North Venture note, the chart indicated

8

that the entire $2 million principal on the note was due, plus interest.  However, the RTC's witness admitted that he had no personal knowledge of the loans that constituted the lawsuit prior to April of 1994, and that he had no personal knowledge of how the records of the failed institution were kept by the RTC. The Consolidation Agreement was not introduced, nor did the RTC make any attempt to show that the borrower had failed to make the minimum payments referenced in the note, or even the amount of such payments, if any, that were due under the Consolidation Agreement.  There was no evidence that net cash flow was available to make payments.

Unlike the other loans, the parties did not stipulate that the borrower had defaulted on the Parkway North Venture note. While the RTC's witness testified that there had been no payments on the note, the RTC did not, in our view, establish that any payments were due under the unusual payment provision of the note.

The RTC responds that there were non-monetary defaults under the note.  The note requires the maker to give notice to the lender of "any material adverse change in the financial condition or business of Maker or any Guarantor," and notice of "any default under any material agreement, contract or other instrument to which Maker or any Guarantor is a party."  The RTC reasons that it showed defaults under the VCMS and Prestonwood

9

loans, guaranteed by Miller, and that these defaults caused a material adverse change in Miller's financial condition.

We find this argument unavailing. First, under the note a change in financial condition or default under another loan is not itself a default. The note only requires *notice* of such events. There was no evidence that the borrower failed to provide notice.

Second, the note provides that while any event of default entitles the lender to accelerate the note, non-monetary defaults occur only after the lender has given written notice to the maker and a 30-day opportunity to cure by the maker. There was no evidence that the lender gave notice that it considered the note to be in default by virtue of defaults on other loans or a change in Miller's financial condition. There is a demand letter in the record concerning all the guaranties. However, this letter is written to Miller, and the note requires notice of default to the maker, Parkwood North Venture. Moreover, the demand letter only claims that "there remains outstanding and unpaid amounts of principal and accrued interest." As explained above, the note distinguishes between monetary and non-monetary defaults. The latter can occur only after the lender provided written notice to the maker of a non-monetary default. There is no evidence of notice of the non-monetary defaults the RTC now claims.

Although we hold that the district court erred in awarding amounts allegedly due on the Parkway North Venture guaranty, we note that the judgment awarded separate amounts due under the Prestonwood, VCMS and Parkway North Venture guaranties.  There is therefore no need to remand the case for further proceedings.  Instead we modify the judgment to exclude the amount awarded on the Parkway North Venture guaranty.

AFFIRMED as MODIFIED.